UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY F. SMITH,

      Plaintiff,

v.

JAY MICHAEL DeBOYER and
JOCELYN MICHELLE BENSON,

      Defendants.

_____/

Case No. 2:22-cv-11572
District Judge Nancy G. Edmunds
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 7, 14)[1]

### I.      Introduction

This is a case concerning the 2020 election. Plaintiff Gary F. Smith (Smith), proceeding *pro se*, is suing Defendants Jay Michael DeBoyer (DeBoyer), the St. Clair County Clerk, and Jocelyn Michelle Benson (Benson), the Michigan Secretary of State, alleging that they failed to preserve and maintain records related to the 2020 election. *See* ECF Nos. 1, 5. Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned. (ECF No. 9).

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

Before the Court are Benson's and DeBoyer's motions to dismiss the complaint, (ECF Nos. 7, 14), to which Smith has responded, (ECF Nos. 21, 23). For the reasons that follow, the undersigned RECOMMENDS that the motions be GRANTED.  She further RECOMMENDS that Smith's Freedom of Information Act (FOIA) claim be DISMISSED WITHOUT PREJUDICE and all of his other claims be DISMISSED WITH PREJUDICE.

## II.    Background

### A.    Complaint

The following information is gleaned from the corrected complaint.  (ECF No. 5).[2]  *See, e.g.*, *Lawson v. Mich. First Credit Union*, No. 20-cv-10460, 2020 WL 2131805, at *1 (E.D. Mich. May 5, 2020) ("Because this is a motion to dismiss, the facts recited below are stated as they are alleged in Plaintiff's Complaint.").

Smith alleges that Benson and DeBoyer violated their obligations under federal election law, specifically under 52 U.S.C. § 20701, to " 'retain and preserve all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election.' " (*Id.*, PageID.19).  Smith supports this allegation by stating that

---

[2] Smith filed a complaint, (ECF No. 1), and a "corrected complaint," (ECF No. 5), which contains his signature with no other changes.

1) St. Clair County 2020 election records demonstrate that there were "substantial discrepancies" between the number of ballots cast compared to the number of registered voters;

2) Benson and DeBoyer's so-called risk-limiting audit examined only 5% of the total ballots cast in St. Clair County thereby violating Smith's rights as a voter under the Michigan Constitution;

3) Benson and DeBoyer performed so-called preventative maintenance on St. Clair County voting machines in July 2021 leading to the premature deletion of 2020 election records;

4) According to a FOIA request, Benson's " 'Qualified Voter File' " lists registered voters dating back to January 1, 1800, which clearly establishes "negligence and maladministration of an election";

5) A contract between the State of Michigan and Dominion Voting Systems Inc. was violated because FedEx tracking numbers demonstrate that tabulators were not manufactured in Plano, Texas as contractually required; and

6) St. Clair County is "delinquent" on a FOIA request seeking "unredacted email communications" between Benson and DeBoyer.

(*Id*.).

Smith's requested relief includes changes to the maintenance of the

Qualified Voter File, the reregistration of all Michigan voters before the next election cycle, emergency custody of all paper ballots cast in St. Clair County during the 2020 election, penalization of Benson and DeBoyer via fines and imprisonment for each deficient election record under 52 U.S.C. § 20702, and the authorization of poll observers to inspect all voting "systems at any time and without advanced notice."  (*Id*., PageID.20-21).

### B.    Benson's Reliance on Government Websites

Before addressing the parties' arguments in support of dismissal, the undersigned first considers the effect of Benson's citation to and reliance upon information contained on government websites in refuting Smith's factual assertions.

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Information found on a government website can be considered as a public record.

However, in *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005), the Sixth Circuit vacated a district court's dismissal of a case because the

court relied upon information found on the Columbus City Attorney's website.  In doing so, the Sixth Circuit stated that while "[a]ll circuits to consider the issue have noted that a court may take judicial notice of at least some documents of public record when ruling on a Rule 12(b)(6) motion" that most of the circuits "have held that the use of such documents is proper only for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Id*. (citing cases from the Fifth and Seventh Circuits).  The Sixth Circuit further noted that "in general a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned[,]" and that "the majority of the cases which do not allow a court to take judicial notice of the contents of a public record do so because there is no way for an opposing party, prior to the issuance of the court's decision, to register his or her disagreement with the facts in the document of which the court was taking notice." *Id*.  For these reasons, the Sixth Circuit concluded that "in order to preserve a party's right to a fair hearing, a court, on a motion to dismiss, must only take judicial notice of facts which are not subject to reasonable dispute." *Id*.

For the reasons explained by the Sixth Circuit in *Passa* and because consideration of the information potentially found on the cited government websites is not critical to issuing a recommendation on the pending motions to dismiss, the undersigned declines to consider the websites.

III.    Analysis

A.    Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

6

(1972).  However, even in pleadings drafted by *pro se* parties, " 'courts should not

have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. . . .  [N]either may the Court 'conjure up unpled allegations[.]'

" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

## B.   Application

The undersigned has endeavored to read Smith's complaint liberally in order

to fully address any claim that Smith attempts to states.  *See Uduko v. Cozzens*, 975

F. Supp. 2d 750, 771 (E.D. Mich. 2013) ("[O]n review of the complaint as a whole

and considering the undersigned's obligation to read plaintiff's *pro se* complaint

indulgently, plaintiff's complaint is not confusing or unreasonably prolix.").  The

undersigned finds that Smith has attempted to state the following: (1) claims under

52 U.S.C. §§ 20701, 20702 alleging that Benson and DeBoyer failed to preserve

and maintain records related to the 2020 election; (2) a claim under the Michigan

Constitution alleging that Benson and DeBoyer violated his rights as a voter; (3) a

negligence claim against Benson related to the Qualified Voter File; (4) a breach of

contract claim alleging that Dominion Voting Systems Inc. violated a contract

between itself and the State of Michigan; and (5) a FOIA claim alleging that St.

Clair County has failed to timely respond to Smith's request for unredacted emails

between Benson and DeBoyer.  *See* ECF No. 5.  Each of these claims will be

addressed in turn below.[3]

### 1.   Claims Under 52 U.S.C. §§ 20701, 20702

Smith appears to be attempting to state claims under both 52 U.S.C. § 20701

(retention and preservation of records and papers by officers of elections; deposit

with custodian; penalty for violation) and 52 U.S.C. § 20702 (theft, destruction,

concealment, mutilation, or alteration of records or papers; penalties) against both

Benson and DeBoyer.  Both 52 U.S.C. § 20701 and 52 U.S.C. § 20702 are criminal

statutes.  Smith argues that his allegations clearly establish that both Benson and

DeBoyer have engaged in conduct forbidden by these statutes, *see* ECF Nos. 21,

23; however, he fails to counter Benson and DeBoyer's argument that these

criminal statutes do not confer private rights of action.

---

[3] The undersigned recommends dismissal on a few of Smith's claims on different
grounds than those asserted by Benson and DeBoyer.  *See, e.g.*, *Mady v.
Athanasious*, No. 05-74832, 2006 WL 2190517, at *1 (E.D. Mich. Aug. 1, 2006)
("The Court also grants Defendant's motion to dismiss Plaintiff's Racketeer
Influenced Corrupt Organization Act ("RICO") claim, but on different grounds
than those asserted by Defendant.").  For example, the undersigned addresses the
merits of Smith's breach of contract and negligence claims rather than
recommending dismissal for failing to meet the pleading standards under Fed. R.
Civ. P. 8, as urged by Benson and DeBoyer.

The Supreme Court "ha[s] been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994).  The Sixth Circuit has also long recognized that "the general rule is that a private right of action is not maintainable under a criminal statute."  *Am. Postal Workers Union, AFL-CIO, Detroit Local v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973). Moreover, in the wake of the 2020 election, other federal courts have held that 52 U.S.C. §§ 20701, 20702 do not provide private causes of action.  *See, e.g.*, *Ickles v. Whitmer*, No. 1:22-cv-817, 2022 WL 4103030, at *3 (W.D. Mich. Sept. 8, 2022) (stating that "52 U.S.C. 20701 likely does not create a private right of action."); *Pirtle v. Nago*, No. 22-00381, 2022 WL 3915570, at *3 (D. Haw. Aug. 31, 2022) ("But, in a word, 52 U.S.C. § 20701 does not confer a private right of action.") (cleaned up); *Soudelier v. Dep't of State La.*, No. 22-2436, 2022 WL 3686422, at *1 (E.D. La. Aug. 25, 2022) ("Plaintiff's motion fails because the statutes under which plaintiff seeks relief do not confer private rights of action."); *Ayyaduri v. Galvin*, 560 F. Supp. 3d 406, 408-409 (D. Mass. Sept. 10, 2021) ("Plaintiff had also failed to plead a plausible claim for which relief could be granted because the Complaint only alleged that Secretary Galvin had failed to preserve ballot images in violation of 52 U.S.C. §§ 20701-20702, which do not provide a private right of action.").

Accordingly, based on the above cited authority, the undersigned concludes that 52 U.S.C. §§ 20701, 20702 do not provide private causes of action and that Smith's claims purportedly brought under these statutes should therefore be dismissed.

2.      Claim Under Michigan Constitution

Smith also alleges that the actions of Benson and DeBoyer violated his rights as a voter under the Michigan Constitution.  The relevant constitutional subsection states that every Michigan voter has "[t]he right to have the results of statewide elections audited, in such a manner as prescribed by law, to ensure the accuracy and integrity of elections."  Mich. Const. 1963, Art. 2, § 4(1)(h). However, the Michigan Court of Appeals has recently considered the issue of whether a private citizen can conduct independent audits of an election and ultimately held that a private citizen cannot.  *Bailey v. Antrim Cnty.*, ___ Mich. App. ___, ___, ___ N.W.2d ___, 2022 WL 1193720, at *4-5 (Apr. 21, 2022) (noting that § 4(1)(h) "does not permit an audit to be performed in the manner dictated by an individual voter, and [that instead] it clearly provides that *the Legislature* may expand the rights provided in § 4(1)(h)[,]" and further noting that the Legislature has not expanded those rights) (emphasis in original).

"A federal court must accord the same precedential value to a state-court decision as it would be accorded by that state's courts."  *Griffin v. Reznik*,

10

609 F. Supp. 2d. 695, 703 (W.D. Mich. 2008). "A published opinion of the [Michigan] Court of Appeals has precedential effect under the rule of stare decisis." Mich. Ct. R. 7.215(C)(2).[4] Accordingly, the Michigan Court of Appeals' holding in *Bailey* (a published decision) that a private citizen like Smith cannot conduct an independent election audit is binding on this Court. Thus, Smith's claim under Mich. Const. 1963, Art. 2, § 4(1)(h) should be dismissed.

### 3.    Negligence Claim

Smith alleges that Benson's maintenance of the Qualified Voter File constitutes "negligence and maladministration of an election" because the Qualified Voter File lists registered voters dating back to January 1, 1800.

As a preliminary matter, it is important to note that "[i]f every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute, and the elaborate state election contest procedures, designed to assure speedy and orderly disposition of the

---

[4] Smith appears to argue in his response to Benson's motion to dismiss that this Court should not rely on *Bailey* because it may be further considered on appeal by a Michigan court. A review of the docket in *Bailey* suggests that the Michigan Supreme Court received the trial court record and parties' papers over the course of the summer. Nonetheless, regardless of the case's status in the Michigan Supreme Court, until the Michigan Supreme Court rules otherwise, the decision of the Michigan Court of Appeals remains binding. *See* Mich. Ct. R. 7.215(C)(2) ("The filing of an application for leave to appeal to the [Michigan] Supreme Court or a [Michigan] Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the [Michigan] Court of Appeals.").

11

multitudinous questions that may arise in the electoral process, would be superseded by a section 1983 gloss." *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980). That said, "[a] claim under 42 U.S.C. § 1983 has two elements: (1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of rights secured by federal law." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008) (internal quotation marks and citations omitted).

While Smith does not state which federal constitutional right underlies his claim against Benson, his claim is best understood as one under the Due Process Clause because the claim goes to "the fairness of the official terms and procedures under which the election was conducted." *Griffins v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978); *see also League of Women Voters of Ohio*, 548 F.3d at 478 ("The Due Process Clause is implicated, and § 1983 relief is appropriate, in the exceptional case where a state's voting system is fundamentally unfair."). An example of a case implicating the Due Process Clause is one in which "a state employs non-uniform rules, standards and procedures, that result in significant disenfranchisement and vote dilution or significantly departs from previous state election practice." *Warf v. Bd. of Elections of Green Cnty., Ky.*, 619 F.3d 553, 559 (6th Cir. 2010) (cleaned up); *see also Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2nd Cir. 2005) ("Infringements of voting rights that have risen to the level of

12

constitutional violation include: dilution of votes by reason of malapportioned voting districts or weighted voting systems, *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); purposeful or systematic discrimination against voters of a certain class, *Carrington v. Rash*, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), geographic area, *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), or political affiliation, *Shakman v. Democratic Org. of Cook County*, 435 F.2d 267 (7th Cir.1970); and other willful conduct that undermines the organic processes by which candidates are elected, *see, e.g.*, *Smith v. Cherry*, 489 F.2d 1098 (7th Cir.1973).").

Moreover, "allegations of mere negligence will not sustain an action under § 1983. . . .  Rather, when litigating under § 1983, the plaintiff must prove the culpable mental state applicable to the underlying constitutional right." *League of Women Voters of Ohio*, 548 F.3d at 476.  Ultimately, "a finding of intentional conduct [is] a prerequisite for a due process claim." *Shannon*, 394 F.3d at 94 (citing *Daniels v. Williams*, 474 U.S. 327, 330-331 (1986)).

Here, Smith asserts that Benson's maintenance of the Qualified Voter File constituted "[a] clear act of negligence and maladministration of an election." (ECF No. 5, PageID.19).  Negligence, however, is not enough to sustain a federal action against Benson.  Furthermore, the inclusion of presumably deceased voters in the Qualified Voter File does not rise to the level of a Due Process violation

13

under the previously cited cases.  To the extent that there is any irregularity with

Benson's maintenance of the Qualified Voter File, such irregularity would best be

classified as "garden variety."  *See, e.g.*, *Shannon*, 394 F.3d at 96 (collecting

cases).  For these reasons, the undersigned recommends dismissal of Smith's

negligence claim against Benson.

### 4.     Breach of Contract Claim

Smith next alleges that Dominion Voting Systems Inc. breached a contract

between itself and the State of Michigan because FedEx tracking numbers

demonstrate that tabulators were not manufactured in Plano, Texas as contractually

required.  In his response to DeBoyer's motion to dismiss, Smith asserts that

DeBoyer was a signatory of this contract, and, as such, that the breach of contract

claim is properly asserted against him.  (ECF No. 23, PageID.550).

It is undisputed that Smith is not a party to the contract between Dominion

Voting Systems Inc. and the State of Michigan.  Accordingly, he can only state a

claim for breach of contract if he is found to be a third-party beneficiary.  Under

state law, "[a]ny person for whose benefit a promise is made by way of contract . .

. has the same right to enforce said promise that he would have had if the said

promise had been made directly to him as the promisee."  Mich. Comp. Laws

600.1405.

"Michigan law looks to the 'contract itself,' focusing on its 'form and

meaning,' for evidence that a person or a class is an intended third-party beneficiary because the person or class must be 'directly referred to in the contract.' " *Johnson v. Doodson Ins. Brokerage, LLC*, 793 F.3d 674, 679 (6th Cir. 2015) (quoting *Schmalfeldt v. N. Pointe Ins. Co.*, 469 Mich. 422, 428, 670 N.W.2d 651 (2003)).

Here, Smith did not attach a copy of the contract, so it is not possible to determine with certainty whether he was a third-party beneficiary.  However, the undersigned finds that it is not plausible for Smith to be directly referenced in the contract at issue or that he belongs to a class that was directly referred to in the contract, particularly because the Michigan Supreme Court has determined that when a contract refers to "members of the public at large," it is "a class too broad to qualify for third-party beneficiary status under the statute." *Johnson*, 793 F.3d at 679 (citing *Schmalfeldt*, 469 Mich. at 429).  Accordingly, Smith's claim for breach of contract should be dismissed.

### 5.    FOIA Claim

Smith alleges that St. Clair County has failed to timely respond to his May 19, 2022 request for unredacted emails between Benson and DeBoyer.

Under state law, a FOIA request must be responded to within five business days of receipt, Mich. Comp. Laws 15.235(2), and "[i]f a public body does not produce a covered record, the requesting person may sue to compel disclosure[,]"

*Murray v. Cowell*, 332 F. App'x 241, 245 (6th Cir. 2009) (citing Mich. Comp. Laws 15.240(1)(b) & (4)).  Taking Smith's allegations as true, which is required at this stage, the complaint contains sufficient facts to state a claim under Michigan's FOIA statute.  However, if the undersigned's other recommendations are adopted, the FOIA claim would be the only claim to survive dismissal under Rule 12(b)(6).

A claim under Michigan's FOIA statute is a state law claim.  Under 28 U.S.C. § 1367(c), this Court "has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims."  "This discretion is guided by considerations of judicial economy, avoiding multiplicity of litigation, and avoiding unnecessarily deciding state law issues."  *Gardner v. Mich. State Univ. Bd. of Trustees*, No. 1:12–cv–1018, 2014 WL 558818, at *7 (W.D. Mich. Feb. 11, 2014) (citing *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir.1993)).  However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."  *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996).

Because the undersigned recommends dismissal of all of Smith's other claims, "the balance of considerations weighs against this Court exercising its supplemental jurisdiction here."  *Gardner*, at *7.  Furthermore, "[t]he interests of justice and comity are best served by deferring to Michigan's courts, which are

16

best equipped to interpret and apply their own state's law." *Id*. (citing *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 585 (6th Cir. 2005)).  Accordingly, Smith's FOIA claim should be dismissed without prejudice.

6.      Sanctions

Both Benson and DeBoyer request the imposition of costs and fees for having to defend against Smith's lawsuit.  A court can impose such sanctions under Fed. R. Civ. P. 11.  However, "[c]ourts have generally refrained from sanctioning pro se plaintiffs under Rule 11 unless the plaintiff has filed multiple frivolous claims[.]" *Russell v. Sanilac Cnty.*, No. 14-13134, 2015 WL 5626628, at *5 (E.D. Mich. Sept. 24, 2015) (collecting cases).

The undersigned performed a search using Smith's name and did not discover any other lawsuits filed by him in the Eastern District of Michigan.  With the exception of his state law FOIA claim, Smith has failed to state viable claims against either DeBoyer or Benson.  However, simply because Smith's claims are subject to dismissal does not mean that Rule 11 sanctions are warranted.  *See id*. ("Although the Court finds that Plaintiff's allegations are meritless, this is the first occasion in which she has brought her claims in federal court.  Plaintiff is not a frequent litigant; a search of the docket reveals that she has previously filed one other, unrelated action with this Court in 2007.").  Therefore, the undersigned does not recommend imposing sanctions on Smith.

17

IV.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that

Benson's and DeBoyer's motions to dismiss, (ECF Nos. 7, 14), be GRANTED.

Smith's FOIA claim should be DISMISSED WITHOUT PREJUDICE and all of

his other claims should be DISMISSED WITH PREJUDICE.


Dated: October 12, 2022                    s/Kimberly G. Altman
Detroit, Michigan                          KIMBERLY G. ALTMAN
                                           United States Magistrate Judge


## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 12, 2022.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager